IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| XL INSURANCE AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:21-cv-0478-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| METANOIA, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant Metanoia's motion to dismiss, ECF No. 7. For the reasons set forth below, the court declines to exercise jurisdiction over this matter and dismisses it.

## I. BACKGROUND

This declaratory judgment action arises out of a coverage dispute between an insurance company, plaintiff XL Insurance America Inc. ("XL"), and its insured, Metanoia. Metanoia is a South Carolina non-profit organization whose mission is to "assist[] neighborhoods and communities in need by establishing quality housing, generating economic development[,] and building leaders." ECF No. 7-2 at 2. According to Metanoia, "A primary focus of [these] efforts is to provide a safe and nurturing place for children after school and an economic re-energizing of the Chicora-Cherokee neighborhood of North Charleston, South Carolina—a neighborhood identified for having the highest concentrations of child poverty in the state." Id. In 2016, Metanoia took on a project to renovate and repurpose the Old Chicora School ("the School") in North Charleston. At the outset, Metanoia insured the project through a $21,400,000 builder's risk insurance policy with XL. ECF No. 6-1 ("the Policy").

1

On February 8, 2020, a fire caused significant damage to the School, which Metanoia contends will "cost over $6,000,000 to repair and replace." Id. Metanoia made a claim under the Policy for the damage, and XL paid out $1,235,000. Metanoia contends that XL has refused to pay it the full amount to which it is entitled under the Policy. XL, on the other hand, contends that because Metanoia "d[oes] not own the building" and "ha[s] only a limited interest in it," Metanoia's "recovery is limited to the actual cash value of the property at the time of the loss." ECF No. 10 at 1–2. On January 15, 2021, Metanoia sent a letter to XL, demanding additional funds to reflect the extent of the loss. ECF No. 7-3 at 2–6. On February 12, 2021, XL responded to Metanoia's demand letter with a letter of its own, stating that Metanoia is not entitled to additional funds under the Policy. Id. at 7–11.

On the same day, XL filed this action with the court, asserting a single declaratory judgment claim. ECF No. 1, Compl. That claim seeks a declaration from the court that XL "is not obligated to pay the additional amounts sought by Metanoia" and a second declaration that "Metanoia is not entitled to recover an amount greater than the amount of its interest in the School." Id. ¶¶ 30–31. Strangely, XL failed to serve Metanoia with respect to this action, apparently "[i]n the hopes that the dispute might yet be resolved amicably." ECF No. 10 at 2. After their exchange of letters, the parties agreed to mediate their dispute and scheduled a mediation for April 15, 2021. Despite its aspirations of amicable resolution, XL attempted to serve Metanoia with this lawsuit on April 14, 2021, one day before the parties' mediation. ECF No. 7-1, Decl. of William Stanfield ¶ 9. The next day, mediation proved unsuccessful.

On April 30, 2021, Metanoia filed a lawsuit against XL in this court. Metanoia et al. v. XL Insurance American, Inc., et al., No. 2:21-cv-1291-DCN (the "1291 Action"). In the 1291 Action, Metanoia and the City of North Charleston ("the City") assert claims against XL and USI Insurance Services ("USI"), an insurance producer for XL, arising from the same coverage dispute that underlies this case. There, Metanoia and the City assert five claims: (1) bad faith against XL, (2) breach of contract against XL, (3) a claim seeking declaratory judgments against XL and USI, (4) reformation of policy against XL and USI, and (5) negligence against USI. Id., ECF No. 1. To be clear, the 1291 Action arises from precisely the same set of facts from which this action arises. On June 9, 2021, XL filed an answer in the 1291 Action and asserted a counterclaim for a declaratory judgment, seeking the exact same declarations that it seeks in this case. Id., ECF No. 13 ¶¶ 36–37 (seeking declarations that XL "is not obligated to pay the additional amounts sought by Metanoia" and that "Metanoia is not entitled to recover an amount greater than the amount of its interest in the School[.]"). In other words, XL now seeks the exact same declarations in two separate lawsuits pending before this court.

Turning back to the instant action, Metanoia filed a motion to dismiss on May 26, 2021. ECF No. 7. On June 9, 2021, XL filed a response, ECF No. 10, and on June 16, 2021, Metanoia filed a reply, ECF No. 11. Accordingly, the motion has been fully briefed and is now ripe for the court's review.

## II. STANDARD

The Declaratory Judgment Act states that

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201. Acknowledging Article III's circumscription of federal jurisdiction to "cases and controversies," the Declaratory Judgment Act limits its application to "case[s] of actual controversy," meaning that it "is operative only in respect to controversies which are such in the constitutional sense." Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240 (1937); see also Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 592 (4th Cir. 2004) ("A case meets the actual controversy requirement only if it presents a controversy that qualifies as an actual controversy under Article III of the Constitution."). A declaratory judgment action presents a justiciable controversy where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).

Even where a declaratory judgment action presents a justiciable controversy, the court maintains discretion to decline exercising jurisdiction over it. See Wilton v. Seven Falls Co., 515 U.S. 277, 289–90 (1995); see also Trustgard Ins. Co. v. Collins, 942 F.3d 195, 201 (4th Cir. 2019) ("[The Declaratory Judgment] Act gives federal courts discretion to decide whether to declare the rights of litigants."). Such discretion, however, "is not unbounded," and a district court may refuse to entertain a declaratory judgment action only "for good reason." Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 375 (4th Cir. 1994) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937)) (internal quotation marks omitted). The Fourth Circuit has identified the following factors to guide a court's exercise of that discretion:

> (1) whether the judgment will serve a useful purpose in clarifying the legal relations in issue; (2) whether the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding; (3) considerations of federalism, efficiency, and comity; and (4) whether the declaratory judgment action is being used merely as a device for procedural fencing—that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable.

Hogs & Heroes Found. Inc. v. Heroes, Inc., 202 F. Supp. 3d 490, 498 (D. Md. 2016) (quoting Aetna Cas. & Sur. Co. v. Ind–Com Elec. Co., 139 F.3d 419, 422–23 (4th Cir. 1998)) (internal quotations omitted).

### III.  DISCUSSION

In its motion to dismiss, Metanoia seeks dismissal of this action for insufficient service of process or, in the alternative, asks that the court consolidate this action with the 1291 Action.  Rather than take either of those actions, the court resolves to decline jurisdiction over this action for a whole host of reasons, the most salient being that entertaining it would serve no "useful purpose."  Aetna Cas. & Sur. Co., 139 F.3d at 422.[1]

Fundamentally, resolving this action would serve no useful purpose because its sole claim is currently pending before the court in the 1291 Action.  As the court explained above, this action involves a single declaratory judgment claim in which XL seeks declarations that XL "is not obligated to pay the additional amounts sought by Metanoia" and that "Metanoia is not entitled to recover an amount greater than the

---

[1] As an initial matter, the law authorizes the court to decline jurisdiction under the Declaratory Judgment Act sua sponte.  See Standard Ins. Co. v. Deen, 2008 WL 11363725, at *2 (D. Md. July 24, 2008) ("Numerous decisions have recognized . . . that a district court may sua sponte exercise its discretion not to hear a case under the Declaratory Judgment Act.") (collecting cases from the Third, Fourth, and Fifth Circuits).

5

amount of its interest in the School." Id. ¶¶ 30–31. In the 1291 Action, XL has asserted a counterclaim that seeks exactly the same declarations from the same court, word-for-word. 2:21-cv-1291-DCN, ECF No. 13 ¶¶ 36–37 (seeking declarations that XL "is not obligated to pay the additional amounts sought by Metanoia" and that "Metanoia is not entitled to recover an amount greater than the amount of its interest in the School[.]"). In other words, this action is entirely redundant. See Pertuit v. Youthspan, Inc., 2003 WL 356021, at *5 (E.D. La. Feb. 13, 2003) (holding that the existence of a "parallel federal court action" "militates toward dismissing the action because . . . it would be redundant for the Court to allow both to proceed, in light of the similarity of facts, parties, and law."). As such, resolving the declaratory judgment claim in this action would serve no useful purpose, given that the parties are currently adjudicating it in the 1291 Action.

In the same vein, considerations of efficiency and wise judicial administration force the court's hand. Aetna Cas. & Sur. Co., 139 F.3d at 422 (holding that the court's discretion "must be guided" by, inter alia, considerations of efficiency, comity, and wise judicial administration). The court can think of no route more inefficient than separately adjudicating two identical claims in two distinct lawsuits. Courts in this district have declined jurisdiction over declaratory judgment claims in the face of such judicial waste. Monster Daddy LLC v. Monster Cable Prod., Inc., 2010 WL 4853661, at *5 (D.S.C. Nov. 23, 2010) ("Although federal courts normally should adjudicate all claims within their discretion, in the declaratory judgment context this principle yields to considerations of practicality and wise judicial administration.").

Adding to the egregious inefficiency that would result from the court's exercise of jurisdiction here, this action represents only a sliver of the underlying dispute. Here, XL

asserts a single claim seeking a declaration of the coverage to which Metanoia is entitled under the Policy. The 1291 Action, conversely, includes all the claims and parties that encapsulate the entire controversy. The court sits in a much better position to fairly adjudicate XL's declaratory judgment claim in the 1291 Action than it does in this action, given that the 1291 Action gives the court the benefit of the entire picture. As just one example, Metanoia's position is that the City "is an insured under the Policy because it was an owner of the School at the time of the fire." ECF No. 7-2 at 2. Further, Metanoia contends, "USI and XL were [ ] supposed to name the City as an insured on the face of the Policy, but they did not." Id. Reflecting that position, the City is a plaintiff in the 1291 Action and asserts a claim for reformation of the Policy against XL and USI, alleging that "the City is an Additional Insured under the Policy based on the language of the Policy." 21-cv-1292-DCN, ECF No. 1 ¶ 68. Accordingly, the court will resolve the coverage issue in the 1291 Action after considering arguments from all interested parties, including the City. Resolving the coverage dispute in this action, conversely, would require the court to consider Metanoia's position without the benefit of hearing from USI or the City on the matter. The Fourth Circuit has noted that the absence of interested parties in a declaratory judgment action is a "particularly salient" consideration determining whether to decline jurisdiction. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 298 (4th Cir. 2005) (quoting Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 257 (4th Cir. 1996)).[2]

---

[2] New Wellington involved a parallel state suit, not a parallel federal suit like the one here. Nevertheless, the logic of the Court there applies with equal force to the circumstances here. 416 F.3d at 298 (noting the inefficiencies associated with resolving a declaratory judgment action in the absence of interested parties).

Compounding the problem, resolving a declaratory judgment claim in the absence of interested parties risks inconsistent, piecemeal adjudication. As the Fourth Circuit has stated, "[I]t makes no sense as a matter of judicial economy for a federal court to entertain a declaratory action when the result would be to 'try a controversy by piecemeal, or to try particular issues without settling the entire controversy.'" Mitcheson v. Harris, 955 F.2d 235, 239 (4th Cir. 1992) (quoting Quarles, 92 F.2d at 324). Entertaining this suit would fly in the face of the principles that lie at the heart of the declaratory judgment jurisprudence.

Further, XL's initiation of this declaratory judgment action cuts against the spirit and purpose of the Declaratory Judgment Act. "[T]he Declaratory Judgment Act was intended to fix the problem that arises when the other side does not sue." Sony Elecs., Inc. v. Guardian Media Techs., Ltd., 497 F.3d 1271, 1284 (Fed. Cir. 2007); see also E. Edelmann & Co. v. Triple-A Specialty Co., 88 F.2d 852, 854 (7th Cir. 1937) (noting that Congress intended the Declaratory Judgment Act to prevent the "avoidable damages" that would accrue while an aggrieved party purposefully let a dispute fester rather than file suit). This action is entirely out of step with that purpose. In January 2021, Metanoia sent XL a letter explaining its position and demanding additional funds under the Policy. XL responded to the letter a month later and filed this action the very same day. In other words, XL did not file this suit as a result of Metanoia's refusal to resolve the dispute or attempt to delay the adjudication of this controversy; XL filed this action at the very outset of the dispute, when the parties had just begun preliminary attempts to amicably resolve it, in a strategic move to beat Metanioa to the punch. As the case law makes clear, Congress did not intend the Declaratory Judgment Act to be a device by which a

party could procedurally outmaneuver an aggrieved party while the two engage in attempts to amicably resolve their dispute. This declaratory judgment action more accurately reflects "procedural fencing" than an earnest attempt to resolve unsettled legal relations. Aetna Cas. & Sur., 139 F.3d at 422 (describing procedural fencing as a device "to provide another forum in a race for res judicata.").[3] This consideration weighs strongly in favor of declining jurisdiction.

Finally, declining jurisdiction over this matter achieves the best result. Metanoia asks this court to dismiss this action because it has not, it contends, been properly served by XL. But as this court has recently held, it is the rare case of improper service that warrants a suit's dismissal. Smith v. Kelso, 2020 WL 3964806, at *4 (D.S.C. July 13, 2020) (holding that because "the prevailing purpose of the service rules are to ensure that a defendant is notified that a lawsuit has been filed against him," "a plaintiff's failure to strictly comply with [Fed. R. Civ. P.] 4 does not warrant dismissal of the case where the defendant has actual notice of the lawsuit against it"). Alternatively, Metanoia asks the court to consolidate this action with the 1291 Action pursuant to Fed. R. Civ. P. 42. But doing so would serve no purpose other than to needlessly waste effort and resources. This action involves a single declaratory judgment claim asserted by XL. XL has

---

[3] For this reason, the fact that XL filed this action before Metanoia and the City filed the 1291 Action does not dampen the court's resolve to decline jurisdiction. Metanoia should not be punished for its attempts to amicably resolve this dispute before resorting to litigation, and XL should not receive a benefit for resorting to litigation right off the bat. Moreover, although XL filed this suit in February 2021, it failed to attempt service on Metanoia until April 14, 2021, one day before the parties' mediation. Metanoia and the City filed the 1291 Action only 15 days later. Courts have found that such brief periods between filings should be disregarded. Motorists Mut. Ins. Co. v. Frazier, 623 F. Supp. 2d 727, 734 (S.D.W. Va. 2009) ("The first[-]filed argument is of little weight to the Court, as all parties filed their suits within a relatively short time after the [underlying indecent].").

asserted the very same claim—word-for-word—in the 1291 Action. Accordingly, consolidating this lawsuit into the 1291 Action would have the effect of adding a claim to the 1291 Action that already exists verbatim. Therefore, the court sees no point in consolidation. As such, the court finds that declining jurisdiction and dismissing this action serves the ends of judicial efficiency without harming the rights of any interested party. Of course, XL can continue to seek in the 1291 Action the relief it sought in this lawsuit.

## IV. CONCLUSION

For the foregoing reasons the court **DECLINES JURISDICTION** over this action. Accordingly, the court **DENIES AS MOOT** Metanoia's motion to dismiss.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**July 15, 2021
Charleston, South Carolina**